UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

RONALD BENJAMIN MITCHELL,          :    CHAPTER 13
*AKA RONALD B. MITCHELL*          :    CASE NO. 23-30450
*AKA RONALD BENJAMIN MITCHELL*

DEBORAH ANN MITCHELL,
*AKA DEBORAH A. MITCHELL*
*AKA DEBORAH ANN MITCHELL*
    DEBTORS

WELLS FARGO BANK, N.A.
    MOVANT

VS.

RONALD BENJAMIN MITCHELL,
*AKA RONALD B. MITCHELL*
*AKA RONALD BENJAMIN MITCHELL*

DEBORAH ANN MITCHELL,          :    January 10, 2024
*AKA DEBORAH A. MITCHELL*
*AKA DEBORAH ANN MITCHELL*
    DEBTORS
ROBERTA NAPOLITANO, TRUSTEE
    RESPONDENTS

## MOTION FOR RELIEF FROM AUTOMATIC STAY
## (REAL PROPERTY)

The undersigned Movant, Wells Fargo Bank, N.A. ("Movant") hereby moves this Court, pursuant to

11 U.S.C. § 362, for relief from the automatic stay with respect to certain real property of Ronald

Benjamin Mitchell *aka Ronald B. Mitchell aka Ronald Benjamin Mitchell* and Deborah Ann

Mitchell *aka Deborah A. Mitchell aka Deborah Ann Mitchell* ("Debtors") having an address of 290

Tuthill Street, West Haven, Connecticut 06516 ("Property").  In further support of this Motion,

Movant respectfully states:

1.      Ronald B Mitchell has executed and delivered or is otherwise obligated with respect to that certain promissory note in the original principal amount of $147,000.00 ("Note").   A copy of the Note is attached hereto as Exhibit "A". Movant is an entity entitled to enforce the Note and the Mortgage (defined below).

2.      Pursuant to that certain Open-End Mortgage Deed ("Mortgage"), all obligations (collectively, the "Obligations") of the Debtors under and with respect to the Note and the Mortgage are secured by the Property.   A copy of the Mortgage is attached hereto as Exhibit "B".

3.      The Mortgage has been assigned to the Movant pursuant to that certain assignment or assignments of mortgage, a copy of which is attached hereto as Exhibit "C".

4.      Wells Fargo Bank, N.A. services the loan on the Property referenced in this Motion.   In the event the automatic stay in this case is lifted/set aside, this case dismisses, and/or the Debtors obtain a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Wells Fargo Bank, N.A.   At the time of the filing of this Motion, said entity, directly or through an agent, has possession of the promissory note.   The Note is duly endorsed into said entity.   the Movant therefore has standing.

5.      The Debtors have defaulted in post-petition payments due required by the mortgage note as set forth in the attached Motion for Relief from Stay Worksheet (including any additional payments that have since become due), which is incorporated into this Motion by reference and attached hereto.

6.      As set forth in the attached Relief from Stay Worksheet – Real Estate:

(a) Pursuant to 11 U.S.C. § 362(d)(1), cause exists for relief from the automatic stay for the following reasons:

(1) The Debtors are contractually delinquent with payments and the non-payment is insufficient to protect Movant's interest.

7.    The estimated market value of the Property is $248,000.00.  The basis for such valuation is Debtors' Schedule A/B, attached hereto as Exhibit "D".  The amount of the Movant's debt as of December 27, 2023 is approximately $165,522.57.

8.    A foreclosure action was commenced on March 7, 2022 and a Judgment of Foreclosure entered on April 24, 2023.

9.    To the extent that there exists a co-debtor stay under 11 U.S.C. §1301(a), the Movant requests that the same be modified, as to the Movant, to allow the Movant to foreclose its mortgage on the subject premises.

10.    That the 14-day stay described by Bankruptcy Rule 4001(a)(3) be waived because: (b) a Judgment of Strict Foreclosure was entered on April 24, 2023, attached hereto as Exhibit "E".

WHEREFORE, Movant prays that this Court issue an Order terminating or modifying the stay and granting the following:

1.    Relief from the stay allowing Movant and any successors or assign to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

2.    That the 14-day stay described by Bankruptcy Rule 4001(a)(3) be waived.

3.    Further, to the extent that there exists a co-debtor stay under 11 U.S.C. §1301(a),

the Movant requests that the same be modified, as to the Movant, to allow the Movant to foreclose its mortgage on the subject premises.

4.      For such other relief as the Court deems proper.


Dated at Hartford, Connecticut this 10th day of January, 2024.


By:    */s/ Linda  St. Pierre*
       Linda  St. Pierre, Esq.
       McCalla Raymer Leibert Pierce, LLC
       50 Weston St.
       Hartford, CT  06120
       Phone: (860) 808-0606
       Federal Bar No.: Connecticut CT22287


**THIS FIRM IS A DEBT COLLECTOR. WE MAY BE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE. AT THIS TIME, WE ARE ONLY SEEKING TO PROCEED AGAINST THE PROPERTY.  IN THE EVENT OF A BANKRUPTCY DISCHARGE, NO DEFICIENCY JUDGMENT WILL BE ASSESSED AGAINST THE BORROWER.**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

| | | |
|---|---|---|
| RONALD BENJAMIN MITCHELL, | : | CHAPTER 13 |
| *AKA RONALD B. MITCHELL* | : | CASE NO. 23-30450 |
| *AKA RONALD BENJAMIN MITCHELL* | | |

DEBORAH ANN MITCHELL,
*AKA DEBORAH A. MITCHELL*
*AKA DEBORAH ANN MITCHELL*
    DEBTORS

WELLS FARGO BANK, N.A.
    MOVANT

VS.

RONALD BENJAMIN MITCHELL,
*AKA RONALD B. MITCHELL*
*AKA RONALD BENJAMIN MITCHELL*

DEBORAH ANN MITCHELL,
*AKA DEBORAH A. MITCHELL*        :   January 10, 2024
*AKA DEBORAH ANN MITCHELL*
    DEBTORS
ROBERTA NAPOLITANO, TRUSTEE
    RESPONDENTS

<u>PROPOSED ORDER GRANTING WELLS FARGO BANK, N.A. RELIEF FROM STAY</u>

       After notice and a hearing, <u>*see*</u> Bankruptcy Code Section 102(1), on Wells Fargo Bank,

N.A. (hereafter the "Movant") Motion for Relief from Stay, (hereafter, the "Motion"), RE: ECF

NO._____.

       **IT IS HEREBY ORDERED** that the Motion is Granted - the Automatic Stay of 11

U.S.C. § 362(a) is modified to permit the Movant and/or its successors and assigns to commence

and/or continue and prosecute to resolution a foreclosure action and otherwise exercise its rights,

if any with respect to real property known as 290 Tuthill Street, West Haven, Connecticut 06516 in accordance with applicable state law;

**IT IS FURTHER ORDERED** that the 14 day stay of Fed.R.Bankr.P. 4001(a)(3) is waived and the Movant may immediately enforce and implement this Order.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

RONALD BENJAMIN MITCHELL,          :    CHAPTER 13
*AKA RONALD B. MITCHELL*                :    CASE NO. 23-30450
*AKA RONALD BENJAMIN MITCHELL*

DEBORAH ANN MITCHELL,
*AKA DEBORAH A. MITCHELL*
*AKA DEBORAH ANN MITCHELL*
    DEBTORS

WELLS FARGO BANK, N.A.
    MOVANT

VS.

RONALD BENJAMIN MITCHELL,
*AKA RONALD B. MITCHELL*
*AKA RONALD BENJAMIN MITCHELL*

DEBORAH ANN MITCHELL,                     :    January 10, 2024
*AKA DEBORAH A. MITCHELL*
*AKA DEBORAH ANN MITCHELL*
    DEBTORS
ROBERTA NAPOLITANO, TRUSTEE
    RESPONDENTS

## NOTICE OF CONTESTED MATTER RESPONSE DEADLINE

Wells Fargo Bank, N.A. (the "Movant") has filed a Motion for Relief from Automatic Stay (the "Contested Matter") in the above-captioned case.  Notice is hereby given that any response to the Contested Matter must be filed with the Court no later than January 24, 2024, in accordance with Federal Rules of Bankruptcy Procedure 2002(a) and 9014*.  In the absence of a timely filed response, the proposed order in the Contested Matter **may** enter without further notice and hearing, see, 11 U.S.C. §102(1).

Dated:   January 10, 2024                     By:  **/s/ Linda  St. Pierre**
                                                    Linda  St. Pierre, Esq.

McCalla Raymer Leibert Pierce, LLC
50 Weston St.
Hartford, CT  06120
Phone: (860) 808-0606
Federal Bar No.: Connecticut CT22287

*Pursuant to Federal Rule of Bankruptcy Procedure 9006(f), if service is made by mail, three days are added after the response date set in this notice.

**THIS FIRM IS A DEBT COLLECTOR. WE MAY BE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE. AT THIS TIME, WE ARE ONLY SEEKING TO PROCEED AGAINST THE PROPERTY.  IN THE EVENT OF A BANKRUPTCY DISCHARGE, NO DEFICIENCY JUDGMENT WILL BE ASSESSED AGAINST THE BORROWER.**

Connecticut Local Form Relief From Stay Worksheet-Real Estate (08/22/2019)

# RELIEF FROM STAY WORKSHEET-REAL ESTATE

☐    Movant believes it is not necessary to complete the information in the worksheet because:

I Colleen Marie Blaufuss Vice President Loan Documentation

Wells Fargo Bank, N.A.

(hereinafter, "Movant") hereby declare (or certify, verify, or state) as follows:

## BACKGROUND INFORMATION

| | | | | | |
|---|---|---|---|---|---|
| 1. | Real property address which is the subject of this motion: | | | | |
| | 290 Tuthill Street, West Haven, Connecticut 06516 | | | | |
| 2. | Choose One: | ☐ Lender | ☒ Servicer | | |
| | Servicer Name: | Wells Fargo Bank, N.A. | | | |
| 3. | Date of Mortgage: | 2/22/2005 | | | |
| 4. | Post-Petition payment address: | Wells Fargo Home Mortgage P.O. Box 14507 Des Moines, IA 50306 | | | |
| 5. | The manner in which the movant perfected its interest in the property: | | | | |
| | Recorded Open-End Mortgage Deed | | | | |
| 6. | All other material liens and encumbrances on the property: | | | | |
| | $0.00 pursuant to Debtor's Schedule D | | | | |

## DEBT/VALUE REPRESENTATIONS

7. Total pre-petition and post-petition indebtedness of Debtor(s) to Movant at the time of filing the motion:      $165,522.57  (as of 12/27/2023)

8. Movant's estimated market value of the real property:      $248,000.00

9. Source of estimated valuation:      Schedule A/B

## STATUS OF DEBT AS OF THE PETITION DATE

10. Total pre-petition indebtedness of Debtor(s) to Movant as of petition filing date: $159,110.69

    A.    Amount of principal:      $103,686.98

    B.    Amount of interest:      $21,698.78

    C.    Amount of escrow (taxes and insurance):      $29,526.07

    D.    Amount of forced placed insurance expended by Movant:      $0.00

E.    Amount of Attorney's fees billed to Debtor(s) pre-petition:    $0.00

F.    Amount of pre-petition late fees, if any, billed to Debtor(s):    $0.00

11.    Contractual interest rate as of the date of this petition:    6.00%

(If interest rate is (or was) adjustable, please list the rate(s) and dates(s) the rate(s) was/were in effect on a separate sheet and attach the sheet as an exhibit to this form; please list the exhibit number here:)

N/A

12.    Only with regard to a post-petition default, explain any additional pre-petition fees, charges or amounts charged to Debtor's/Debtors' account and not listed above:

Fees, costs due: $4,198.86

(If additional space is needed, please list the amounts on a separate sheet and attach the sheet as an exhibit to this form, please list the exhibit number here:)

N/A

### AMOUNT OF ALLEGED POST-PETITION DEFAULT (AS OF 12/27/2023)

13.    Date last payment was received:    10/17/2023

14.    Alleged total number of payments post-petition from filing of petition through payment due on 12/01/2023, six

15.    List all post-petition payments alleged to be in default:

### SCHEDULE OF PAYMENTS THAT WERE DUE:

| Date Payment Due | Payment Amount Due Post-Petition |
|---|---|
| 07/01/2023 - 10/01/2023($1,720.43) | $6,881.72 |
| 11/01/2023 - 12/01/2023($1,740.25) | $3,480.50 |
| Totals: | $10,362.22 |

### SCHEDULE OF PAYMENTS RECEIVED: SEE EXHIBIT 1

| Date | Amount Received | Amount Applied to Principal and Interest | Amount Applied to Escrow | Late Fee Charged (if any) | Amount Applied to Legal Fees or Costs (specify) |
|---|---|---|---|---|---|
| | $ | $ | $ | $ | $ |
| Totals: | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |

16.    Amount of Movant's Attorney's fees billed to Debtor for the preparation, filing and prosecution of this motion:    $1,050.00    Attorney's fees and costs for this motion may be deemed recoverable.

17.    Amount of Movant's filing fee for this motion:    $199.00    Attorney's fees and costs for this motion may be deemed recoverable.

18.    Only to the extent the movant is seeking payment in the motion, the amount of other Attorney's fees billed to Debtor post-petition:

$0.00

19.    Only to the extent the movant is seeking payment in the motion, the amount of Movant's post-petition inspection fees:

$0.00

Only to the extent the movant is seeking payment in the motion, the amount of Movant's post-petition appraisal/broker's price opinion:

$0.00

20.    Only to the extent the movant is seeking payment in the motion, the amount of forced placed insurance or insurance provided by the Movant post-petition:

$0.00

21.    Only to the extent the movant is seeking payment in the motion, the amount of the sum held in suspense by Movant in connection with this contract, if applicable:

($19.82)

22.    Only to the extent the movant is seeking payment in the motion, the amount of other post-petition advances or charges: i.e., taxes, insurance incurred by Debtor, etc.:

$0.00

23.    Amount and date of post-petition payments offered by the Debtor and refused by the Movant:

| $0.00 | Date: N/A |
|-------|-----------|

## REQUIRED ATTACHMENTS TO MOTION

The following exhibits are attached to the motion in support of the relief requested.

1.    Copies of documents that indicate Movant's interest in the subject property. For purposes of example only, a complete and legible copy of the promissory note or other debt instrument together with a complete and legible copy of the mortgage and any assignments in the chain from the original mortgagee to the current moving party. EXHIBITS A-C

2.    Copies of documents establishing proof of standing to bring this Motion. EXHIBITS A-C

3.    Copies of documents establishing that Movant's interest in the real property was perfected. For the purposes of example only, a complete and legible copy of mortgage containing the applicable recording information. EXHIBITS A-C

CERTIFICATION AND DECLARATION FOR BUSINESS RECORDS

I certify that the information provided in this worksheet and/or exhibits attached to this worksheet is derived from records that were made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters, were kept in the course of the regularly conducted activity; and were made by the regularly conducted activity as a regular practice.

I further certify that copies of any transactional documents attached to this worksheet as required by paragraphs 1, 2, and 3, immediately above, are true and accurate copies of the original documents, I further certify that the original documents are in movant's possession, except as follows: N/A

Colleen Marie Blaufuss
_____

I/we declare (or certify, swear, affirm, verify or state) that the foregoing is true and correct.

Executed on _January 9, 2024_

_Colleen Marie Blaufuss_
Colleen Marie Blaufuss
Vice President Loan Documentation
Wells Fargo Bank, N.A.

---

State of South Carolina)
County of York)

*Sworn/affirmed to and subscribed before me on this* __9th__ *day of* __January__ , 20__24__.
*Personally known [ ] or produced identification [X].*
*Type of identification produced* __Driver's license__

WENDY HERNANDEZ
NOTARY PUBLIC
SOUTH CAROLINA
MY COMMISSION EXPIRES 11-20-2028

_Wendy Hernandez_
*(Signature of Notary Public)*
*My commission expires* __11-20-2028__
*Notary seal*

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

RONALD BENJAMIN MITCHELL,   : CHAPTER 13
*AKA RONALD B. MITCHELL*    : CASE NO. 23-30450
*AKA RONALD BENJAMIN MITCHELL*

DEBORAH ANN MITCHELL,
*AKA DEBORAH A. MITCHELL*
*AKA DEBORAH ANN MITCHELL*
  DEBTORS

WELLS FARGO BANK, N.A.
  MOVANT

VS.

RONALD BENJAMIN MITCHELL,
*AKA RONALD B. MITCHELL*
*AKA RONALD BENJAMIN MITCHELL*

DEBORAH ANN MITCHELL,    : January 10, 2024
*AKA DEBORAH A. MITCHELL*
*AKA DEBORAH ANN MITCHELL*
  DEBTORS
ROBERTA NAPOLITANO, TRUSTEE
  RESPONDENTS

## <u>NOTICE OF CONTESTED MATTER RESPONSE DEADLINE CERTIFICATION</u>

  The undersigned hereby certifies that on the 10th day of January, 2024 in accordance with applicable law, I served the following documents upon the entities listed below (constituting all entities entitled to notice):

 (1) a copy of the pleading initiating the contested matter, specifically:

   Motion for Relief from Stay;

 (2) a copy of the Proposed Order associated therewith; and

 (3) a Notice of Contested Matter Response Deadline

Ronald Benjamin Mitchell
290 Tuthill Street
West Haven, CT 06516

(Pro Se Debtor)

Deborah Ann Mitchell
290 Tuthill Street
West Haven, CT 06516
(Pro Se Debtor)

Roberta Napolitano                          *(served via ECF Notification)*
10 Columbus Boulevard
Ste 6th Floor
Hartford, CT 06106
(Trustee)

U.S. Trustee                                *(served via ECF Notification)*
Giaimo Federal Building
150 Court Street, Room 302
New Haven, CT 06510
(U.S. Trustee)

By:   ***/s/ Linda  St. Pierre***

       Linda  St. Pierre, Esq.
       McCalla Raymer Leibert Pierce, LLC
       50 Weston St.
       Hartford, CT  06120
       Phone: (860) 808-0606
       Federal Bar No.: Connecticut CT22287

# Exhibit 1

Debtor name:  **RONALD B MITCHELL**           Bk Filing Date:  **6/26/2023**           First PP PmtDueDate/Amt:  **7/1/2023 / $1720.43**

| | Post Petition Due Date | Classified Payment Amount Due | Date Funds Received | Transaction Amount Received | Date Funds Applied | Classified Total Amount Applied | Debtor Suspense Balance |
|---|---|---|---|---|---|---|---|
| | | | 10/17/2023 | $19.82 | | | $19.82 |
| | 7/1/2023 | $1,720.43 | | | | | |
| | 8/1/2023 | $1,720.43 | | | | | |
| | 9/1/2023 | $1,720.43 | | | | | |
| | 10/1/2023 | $1,720.43 | | | | | |
| | 11/1/2023 | $1,740.25 | | | | | |
| | 12/1/2023 | $1,740.25 | | | | | |
| **Totals** | | **$10,362.22** | | **$19.82** | | **$0.00** | |

# Exhibit A

# NOTE

February 22, 2005      HAMDEN      Connecticut
*[Date]*      *[City]*      *[State]*

290 TUTHILL STREET, WEST HAVEN, CT 06516
*[Property Address]*

**1.    BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $    147,000.00    (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is    FAMILY CHOICE MORTGAGE CORPORATION        . I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.    INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    6.000    %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3.    PAYMENTS**

    **(A) Time and Place of Payments**

I will pay Principal and interest by making a payment every month.

I will make my monthly payment on the    1st   day of each month beginning on    April,   2005    . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on    March 1, 2035    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at    FAMILY CHOICE MORTGAGE CORPORATION, 23P WHITE'S PATH, SOUTH YARMOUTH, MA 02664

       or at a different place if required by the Note Holder.

    **(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $    881.34     .

**4.    BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

LOAN NUMBER:                  MIN:

Multistate Fixed Rate Note—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3200 01/01
—THE COMPLIANCE SOURCE, INC.—      Page 1 of 3    ALLONGE ATTACHED    12601MU 08/00
www.compliancesource.com        ©2000 The Compliance Source, Inc.

## 5.    LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6.    BORROWER'S FAILURE TO PAY AS REQUIRED

### (A)  Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of       15      calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   5.000      % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B)  Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C)  Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D)  No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E)  Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7.    GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8.    OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9.    WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10.   UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same LOAN NUMBER:

date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
RONALD B MITCHELL                  -Borrower                                           -Borrower

_____ (Seal)          _____ (Seal)
                                   -Borrower                                           -Borrower

*[Sign Original Only]*

LOAN NUMBER: ▮▮▮▮▮▮

**LENDER:**     FAMILY CHOICE MORTGAGE CORPORATION

**BORROWER:**   RONALD B MITCHELL

**PROPERTY:**   290 TUTHILL STREET, WEST HAVEN, CT 06516

**LOAN NO./MIN**

# ENDORSEMENT ALLONGE TO NOTE

This Allonge to Note is to that certain Note dated     February 22, 2005     , executed by   RONALD B MITCHELL

in the amount of $ 147,000.00     , in favor of   FAMILY CHOICE MORTGAGE CORPORATION

as payee.  This Allonge is affixed and becomes a permanent part of said Note.

PAY TO THE ORDER OF

OHIO SAVINGS BANK

WITHOUT RECOURSE.

Cleveland, Ohio _____ 20 ____
PAY TO THE ORDER OF

_____
Without Recourse

OHIO SAVINGS BANK
f/ka OHIO SAVINGS BANK, F.S.B.

BY: _____
Robert Diamond
Authorized Agent

LENDER:   FAMILY CHOICE MORTGAGE CORPORATION

By: _____

Name: WENDEE J. LINDLAND

Title: DIRECTOR OF OPERATIONS

Date: _____2/22/2005_____

Endorsement Allonge to Note (Multistate)
———— THE COMPLIANCE SOURCE, INC. ————
To Order Call: (972) 980-2178 · Fax (972) 392-2891
www.compliancesource.com

(page 1 of 1 pages)
03103MU 01/96  Rev. 08/99
©1999, All Rights Reserved

# Exhibit B

Doc ID: 000043740015 Type: LAN
BK **1393** PG**968-982**

After recording please return to:

OHIO SAVINGS BANK ATTN:
DOCUMENT CONTROL

*[Company Name]*

*[Name of Natural Person]*

1111 CHESTER AVE
*[Street Address]*

CLEVELAND, OH 44114
*[City, State Zip Code]*



———————— *[Space Above This Line For Recording Data]* ————————

# OPEN-END MORTGAGE DEED

**MIN**

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** **"Security Instrument"** means this document, which is dated    February 22, 2005   ,
together with all Riders to this document.

**(B)** **"Borrower"** is   RONALD B MITCHELL AND DEBORAH A MITCHELL, MARRIED COUPLE

. Borrower is the mortgagor under this Security Instrument.

**(C)** **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, Michigan 48501-2026, tel. (888) 679-MERS.

LOAN NUMBER:                              Initials: _____

Connecticut Open-End Mortgage-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     MERS Modified Form 3007 01/01
—THE COMPLIANCE SOURCE, INC.—                                    Page 1 of 14                                         14301CT 08/00
www.compliancesource.com                                                                               © 2000, The Compliance Source, Inc.

**(D)**   **"Lender"** is   FAMILY CHOICE MORTGAGE CORPORATION

Lender is a   **corporation**   organized and existing under the laws of THE STATE OF MASSACHUSETTS   . Lender's address is   23 P WHITES PATH, SOUTH YARMOUTH, MA 02664

**(E)**   **"Note"** means the promissory note signed by Borrower and dated   February 22, 2005   . The Note states that Borrower owes Lender   one hundred forty seven thousand and NO/100ths   Dollars (U.S. $   147,000.00   ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than   March 1, 2035   .

**(F)**   **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."   ·

**(G)**   **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H)**   **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower *[check box as applicable]*:

- ☐ Adjustable Rate Rider
- ☐ Balloon Rider
- ☐ 1-4 Family Rider
- ☐ Condominium Rider
- ☐ Planned Unit Development Rider
- ☐ Revocable Trust Rider
- ☐ Second Home Rider
- ☐ Biweekly Payment Rider

X☒ Other(s) *[specify]* Schedule A Property Description

**(I)**   **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J)**   **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K)**   **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L)**   **"Escrow Items"** means those items that are described in Section 3.

**(M)**   **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

LOAN NUMBER: ▮▮▮▮▮▮▮▮                                 Initials: RBM _____

**(N)** **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O)** **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P)** **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q)** **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

### TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower in consideration of this debt does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the                    County

*[Type of Recording Jurisdiction]*

of          **NEW HAVEN          CITY OF WEST HAVEN**
          *[Name of Recording Jurisdiction]*

     **SEE ATTACHED EXHIBIT A**

which currently has the address of                              290 TUTHILL STREET
                                                                *[Street]*

          WEST HAVEN              , Connecticut          06516              ("Property Address"):
          *[City]*                                       *[Zip Code]*

LOAN NUMBER:                                                      Initials

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successor and assigns of MERS forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1.  Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2.  Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3.   Funds for Escrow Items.**  Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4.   Charges; Liens.**  Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5.   Property Insurance.**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.    **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.    **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable

loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums

secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any

LOAN NUMBER: ▮                                                      Initials: SRM

other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower

must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental

LOAN NUMBER: ▮▮▮▮▮▮▮                                    Initials: _____

protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and foreclosure or sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in court the non-existence of a default or any other defense of Borrower to acceleration and foreclosure or sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke any of the remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**23. Release.** Upon payment and discharge of all sums secured by this Security Instrument, this Security Instrument shall become null and void and Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower waives all rights of homestead exemption in, and statutory redemption of, the Property and all right of appraisement of the Property and relinquishes all rights of courtesy and dower in the Property.

**25. Future Advances.** Lender is specifically permitted, at its option and in its discretion, to make additional loans and future advances under this Security Instrument as contemplated by Section 49-2(c) of the Connecticut General Statutes, and shall have all rights, powers and protections allowed thereunder.

LOAN NUMBER: ███████████                                      Initials: _RBM_ _____

# Schedule A

**FILE NO:** ██████████

**FNTIC NO.:**

LEGAL DESCRIPTION FOLLOWS:

All that certain piece or parcel of land with all the improvements thereon, situated in the Town of West Haven, County of New Haven and State of Connecticut, known as Lots #271 and 272 on plan of lots at West Haven Gardens, belonging to J.W. Wilbur Co., Inc., said plan being made by Ernest W. Branch, surveyor, dated May 17, 1916, on file on Board 32 in the West Haven Town Clerk's Office, said lots being bounded:

WEST:   by Tuthill Street, 80 feet;

NORTH:  by Lot #273 on said plan, 100 feet;

EAST:   by Lots #281 and 282 on said plan, 80 feet;

SOUTH:  by Lot #270 on said plan, 100 feet.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

Printed Name: _____
Edward C. Burt, Jr
*[Please Complete]*

_____ (Seal)
RONALD B MITCHELL                -Borrower

Printed Name: _____
Barbara A. Mascari
*Please Complete]*

_____ (Seal)
DEBORAH A MITCHELL              -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

——————————————— *[Space Below This Line For Acknowledgment]* ———————————————

State of   CONNECTICUT          §
                                §   HAMDEN, FEBRUARY 22, 2005
County of  NEW HAVEN            §

On this the   22nd   day of   February, 2005          , before me,
EDWARD C. BURT, JR.                        , the undersigned officer, personally appeared
RONALD B MITCHELL and DEBORAH A MITCHELL

known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged that he/she/they executed the same for the purposes therein contained.

In witness whereof I hereunto set my hand.

XXXXXXXX    EDWARD C. BURT, JR.

COMMISSIONER OF SUPERIOR COURT

Title of Officer

Received for Record at WEST HAVEN, CT
On 03/04/2005 At 11:53:03 am

West Haven City and Town Clerk

LOAN NUMBER: ██████████

# Exhibit C

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

Wells Fargo- San Antonio Image Capt
4101 Wiseman Blvd Bldg 108
San Antonio, TX 78251-4200
Attn: MAC T7408-01F

Loan #
MIN #:
MERS Phone

Doc ID: 000835380002 Type: LAN
BK 1637 PG 116-117



## Assignment of Mortgage

For Value received,

Mortgage Electronic Registration Systems, Inc (MERS) as nominee for Family Choice
Mortgage Corporation, its successors and assigns.
P.O. Box 2026
Flint, MI 48501-2026

Hereby sells, assigns and transfers to:

Wells Fargo Bank, NA
1 Home Campus
Des Moines, IA 50328

Its successors and assigns all of its right, title, and interest to a certain Mortgage as follows:

Execution Date: 2/22/2005
Legal Name:        RONALD B MITCHELL and DEBORAH A MITCHELL, Married couple
Beneficiary:       Family Choice Mortgage Corporation

| | | Address: | 290 TUTHILL ST |
| County/Town: | New Haven | | WEST HAVEN, CT 06516 |
| State: | CT | | |
| Recording Date: | 3/4/2005 | LoanAmount: | $147,000.00 |
| Document Number: 000043740015 | | | Book: 1393 | Page: 968-982 |
| Pin/Tax Number: | | Folio #: | Certificate #: |
| | | Section: | |

See Attached Exhibit A

Mortgage Electronic Registration Systems, Inc (MERS)

Gao Vang
Assistant Secretary, Mortgage Electronic
Registration Systems, Inc (MERS)

Rochelle Chien
Witnessed by

Witnessed by

State of Minnesota
County of Dakota

On This Thursday, March 24, 2011 before me the undersigned a Notary Public of the state of Minnesota
personally appeared Gao Vang, respectively to me personally known, who being duly Sworn, did say that they are a(n)
Assistant Secretary respectively, of Mortgage Electronic Registration Systems, Inc (MERS) and that the seal affixed to the
foregoing instrument is the seal of said national association by authority of Its Board of Directors and the said Gao Vang
acknowledged the execution of said Instrument to be the voluntary act and deed of Mortgage Electronic Registration Systems,
Inc (MERS), by it voluntary done and executed. Witnessed by my hand and notarial seal the day an last year above written.

Prepared      KAYLA RITCHIE

Taehoony Chin



TAEHOONY CHIN
Notary Public
Minnesota
My Commission Expires January 31, 2013

# Schedule A _____

FILE NO: ▮▮▮▮▮▮

FNTIC NO.:

_____

LEGAL DESCRIPTION FOLLOWS:


All that certain piece or parcel of land with all the improvements
thereon, situated in the Town of West Haven, County of New Haven
and State of Connecticut, known as Lots #271 and 272 on plan of
lots at West Haven Gardens, belonging to J.W. Wilbur Co., Inc.,
said plan being made by Ernest W. Branch, surveyor, dated May 17,
1916, on file on Board 32 in the West Haven Town Clerk's Office,
said lots being bounded:

WEST:   by Tuthill Street, 80 feet;

NORTH:  by Lot #273 on said plan, 100 feet;

EAST:   by Lots #281 and 282 on said plan, 80 feet;

SOUTH:  by Lot #270 on said plan, 100 feet.


Received for Record at WEST HAVEN, CT
On 03/31/2011 At 10:16:53 am

_Deborah Collins_
West Haven City and Town Clerk

# Exhibit D

Fill in this information to identify your case and this filing:

Debtor 1 _Ronald Benjamin Mitchell_
First Name    Middle Name    Last Name

Debtor 2 _Deborah Ann Mitchell_
(Spouse, if filing) First Name    Middle Name    Last Name

United States Bankruptcy Court for the: _____ District of _Connecticut_

Case number _23-30450_

FILED

2023 JUL 10 P 4: 02

CLERK, U.S. BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

☐ Check if this is an amended filing

## Official Form 106A/B

# Schedule A/B: Property

12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1:    Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

1. Do you own or have any legal or equitable interest in any residence, building, land, or similar property?

☐ No. Go to Part 2.
☑ Yes. Where is the property?

**1.1.** _390 Tuthill St_
Street address, if available, or other description

_West Haven CT 06516_
City    State    ZIP Code

_New Haven_
County

**What is the property?** Check all that apply.
☑ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Who has an interest in the property?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

**Other information you wish to add about this item, such as local property identification number:** _____

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Current value of the entire property?** $248,000.⁰⁰

**Current value of the portion you own?** $248,000.00

**Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.** _____

☐ Check if this is community property (see instructions)

If you own or have more than one, list here:

**1.2.** _2019 Jarmin St._
Street address, if available, or other description

_Muskegon Heights_
City

_MI 49444_
State    ZIP Code

_____
County

**What is the property?** Check all that apply.
☐ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☑ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Who has an interest in the property?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

**Other information you wish to add about this item, such as local property identification number:** _____

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Current value of the entire property?** $4,000.00

**Current value of the portion you own?** $4,000.00

**Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.** _____

☐ Check if this is community property (see instructions)

Debtor 1  Ronald Benjamin Mitchell RCNG
First Name  Middle Name  Last Name

Case number (if known) 23-30450

**1.3.**

_____
Street address, if available, or other description

_____

_____
City                    State    ZIP Code

_____

_____
County

**What is the property?** Check all that apply.

☐ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Who has an interest in the property?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

**Other information you wish to add about this item, such as local property identification number:** _____

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Current value of the entire property?**     **Current value of the portion you own?**

$_____     $_____

**Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.**

☐ **Check if this is community property** (see instructions)

**2. Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here.** ..................➔   $_____

---

## Part 2:  Describe Your Vehicles

**Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not?** Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

**3. Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

☐ No
☐ Yes

**3.1.** Make: Mazda
Model: CX9
Year: 2009
Approximate mileage: 117,000 mils
Other information:

_____

**Who has an interest in the property?** Check one.

☐ Debtor 1 only
☑ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ **Check if this is community property** (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Current value of the entire property?**     **Current value of the portion you own?**

$3500.00     $3500.00

If you own or have more than one, describe here:

**3.2.** Make: Dodge Ram
Model: 1500
Year: 2002
Approximate mileage: 162,000
Other information:

_____

**Who has an interest in the property?** Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ **Check if this is community property** (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Current value of the entire property?**     **Current value of the portion you own?**

$2,700.00     $2,700.00

Debtor 1  Ronald Benjamin Mitchell

First Name   Middle Name   Last Name

Case number *(if known)* 23-30450

---

**3.3.** Make: Chevy

Model: Winneabego

Year: 1987

Approximate mileage: 65,000

Other information:

Who has an interest in the property? Check one.

☐ Debtor 1 only
☑ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

Current value of the entire property?

Current value of the portion you own?

$ 4,000.00    $ 4,000.00

---

**3.4.** Make: _____

Model: _____

Year: _____

Approximate mileage: _____

Other information:

Who has an interest in the property? Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

Current value of the entire property?

Current value of the portion you own?

$_____    $_____

---

4. **Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**

*Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

☐ No
☐ Yes

**4.1.** Make: _____

Model: _____

Year: _____

Other information:

Who has an interest in the property? Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

Current value of the entire property?

Current value of the portion you own?

$_____    $_____

---

If you own or have more than one, list here:

**4.2.** Make: _____

Model: _____

Year: _____

Other information:

Who has an interest in the property? Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

Current value of the entire property?

Current value of the portion you own?

$_____    $_____

---

5. **Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here** .............................................................. ➔

$_____

---

Debtor 1    Ronald Benjamin Mitchell
            First Name    Middle Name    Last Name

Case number *(if known)* 23-30450

## Part 3:    Describe Your Personal and Household Items

Do you own or have any legal or equitable interest in any of the following items?

**Current value of the portion you own?**
Do not deduct secured claims or exemptions.

6. **Household goods and furnishings**
   *Examples:* Major appliances, furniture, linens, china, kitchenware
   ☐ No
   ☐ Yes. Describe.........                                    $_____

7. **Electronics**
   *Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games
   ☐ No
   ☐ Yes. Describe..........                                   $_____

8. **Collectibles of value**
   *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles
   ☐ No
   ☐ Yes. Describe.........                                    $_____

9. **Equipment for sports and hobbies**
   *Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments
   ☐ No
   ☐ Yes. Describe.........                                    $_____

10. **Firearms**
    *Examples:* Pistols, rifles, shotguns, ammunition, and related equipment
    ☐ No
    ☑ Yes. Describe.........    Glock 40                       $ 350

11. **Clothes**
    *Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories
    ☐ No
    ☐ Yes. Describe..........                                  $_____

12. **Jewelry**
    Examples: Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver
    ☐ No
    ☑ Yes. Describe.........    Jewelry                        $ 2,000.00

13. **Non-farm animals**
    *Examples:* Dogs, cats, birds, horses
    ☐ No
    ☐ Yes. Describe..........                                  $_____

14. **Any other personal and household items you did not already list, including any health aids you did not list**
    ☐ No
    ☐ Yes. Give specific information. .............            $_____

15. **Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write that number here** ...................    →    $_____

| Debtor 1 | | | | Case number *(if known)* _____ |
|---|---|---|---|---|
| | First Name | Middle Name | Last Name | |

---

| **Part 4:** | **Describe Your Financial Assets** |
|---|---|

Do you own or have any legal or equitable interest in any of the following?

**Current value of the portion you own?**
Do not deduct secured claims or exemptions.

16. **Cash**
Examples: Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition

☐ No
☐ Yes ............................................................................................................ Cash: .................. $_____

17. **Deposits of money**
Examples: Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.

☐ No
☐ Yes ....................          Institution name:

| | | |
|---|---|---|
| 17.1. Checking account: | M & T | $ 147.00 |
| 17.2. Checking account: | _____ | $_____ |
| 17.3. Savings account: | M & T | $ .09 |
| 17.4. Savings account: | _____ | $_____ |
| 17.5. Certificates of deposit: | _____ | $_____ |
| 17.6. Other financial account: | _____ | $_____ |
| 17.7. Other financial account: | _____ | $_____ |
| 17.8. Other financial account: | _____ | $_____ |
| 17.9. Other financial account: | _____ | $_____ |

18. **Bonds, mutual funds, or publicly traded stocks**
Examples: Bond funds, investment accounts with brokerage firms, money market accounts

☐ No
☑ Yes ................          Institution or issuer name:

| | |
|---|---|
| M & T | $ 24,000.00 |
| _____ | $_____ |
| _____ | $_____ |

19. **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**

☐ No
☐ Yes. Give specific information about them ....................

| Name of entity: | % of ownership: | |
|---|---|---|
| _____ | _____ % | $_____ |
| _____ | _____ % | $_____ |
| _____ | _____ % | $_____ |

Debtor 1 _____     Case number (if known)_____
First Name   Middle Name   Last Name

20. **Government and corporate bonds and other negotiable and non-negotiable instruments**

*Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
*Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.

☐ No
☐ Yes. Give specific
   information about
   them.....................

Issuer name:

_____   $_____

_____   $_____

_____   $_____

21. **Retirement or pension accounts**

*Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans

☐ No
☐ Yes. List each
   account separately.

| Type of account: | Institution name: | |
|---|---|---|
| 401(k) or similar plan: | _____ | $_____ |
| Pension plan: | _____ | $_____ |
| IRA: | _____ | $_____ |
| Retirement account: | _____ | $_____ |
| Keogh: | _____ | $_____ |
| Additional account: | _____ | $_____ |
| Additional account: | _____ | $_____ |

22. **Security deposits and prepayments**

Your share of all unused deposits you have made so that you may continue service or use from a company

*Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others

☐ No
☐ Yes.........................

| Institution name or individual: | | |
|---|---|---|
| Electric: | _____ | $_____ |
| Gas: | _____ | $_____ |
| Heating oil: | _____ | $_____ |
| Security deposit on rental unit: | _____ | $_____ |
| Prepaid rent: | _____ | $_____ |
| Telephone: | _____ | $_____ |
| Water: | _____ | $_____ |
| Rented furniture: | _____ | $_____ |
| Other: | _____ | $_____ |

23. **Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)

☐ No
☐ Yes.........................

Issuer name and description:

_____   $_____

_____   $_____

_____   $_____

Debtor 1 _____   Case number (if known)_____
        First Name    Middle Name    Last Name

24. **Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).

❑ No
❑ Yes ................................. Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

_____ $_____
_____ $_____
_____ $_____

25. **Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**

❑ No
❑ Yes. Give specific information about them.... [ ] $_____

26. **Patents, copyrights, trademarks, trade secrets, and other intellectual property**
*Examples*: Internet domain names, websites, proceeds from royalties and licensing agreements

❑ No
❑ Yes. Give specific information about them.... [ ] $_____

27. **Licenses, franchises, and other general intangibles**
*Examples*: Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses

❑ No
❑ Yes. Give specific information about them.... [ ] $_____

**Money or property owed to you?**

**Current value of the portion you own?**
Do not deduct secured claims or exemptions.

28. **Tax refunds owed to you**

❑ No
❑ Yes. Give specific information about them, including whether you already filed the returns and the tax years. ....................... [ ]
Federal: $_____
State: $_____
Local: $_____

29. **Family support**
*Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement

❑ No
❑ Yes. Give specific information.............. [ ]
Alimony: $_____
Maintenance: $_____
Support: $_____
Divorce settlement: $_____
Property settlement: $_____

30. **Other amounts someone owes you**
*Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay, workers' compensation, Social Security benefits; unpaid loans you made to someone else

❑ No
❑ Yes. Give specific information.............. [ ] $_____

Debtor 1 _____   Case number *(if known)*_____
First Name    Middle Name    Last Name

31. **Interests in insurance policies**
   *Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance

   ❑ No
   ❑ Yes. Name the insurance company
   of each policy and list its value. ...

   | Company name: | Beneficiary: | Surrender or refund value: |
   |---|---|---|
   | _____ | _____ | $_____ |
   | _____ | _____ | $_____ |
   | _____ | _____ | $_____ |

32. **Any interest in property that is due you from someone who has died**
   If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive
   property because someone has died.

   ❑ No
   ❑ Yes. Give specific information.............   [                    ]   $_____

33. **Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
   *Examples:* Accidents, employment disputes, insurance claims, or rights to sue

   ❑ No
   ❑ Yes. Describe each claim. ...................   [                    ]   $_____

34. **Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights
   to set off claims**

   ❑ No
   ❑ Yes. Describe each claim. ...................   [                    ]   $_____

35. **Any financial assets you did not already list**

   ❑ No
   ❑ Yes. Give specific information.............   [                    ]   $_____

36. Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached
   for Part 4. Write that number here .................................................................................   ➔   $_____

---

**Part 5:**   **Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1.**

37. Do you own or have any legal or equitable interest in any business-related property?
   ❑ No. Go to Part 6.
   ❑ Yes. Go to line 38.

   **Current value of the
   portion you own?**
   Do not deduct secured claims
   or exemptions.

38. **Accounts receivable or commissions you already earned**

   ❑ No
   ❑ Yes. Describe.......   [                    ]   $_____

39. **Office equipment, furnishings, and supplies**
   *Examples:* Business-related computers, software, modems, printers, copiers, fax machines, rugs, telephones, desks, chairs, electronic devices

   ❑ No
   ❑ Yes. Describe.......   [                    ]   $_____

Debtor 1 _____    Case number *(if known)*_____
First Name    Middle Name    Last Name

**40. Machinery, fixtures, equipment, supplies you use in business, and tools of your trade**

☐ No

☐ Yes. Describe........ | _____ | $_____

**41. Inventory**

☐ No

☐ Yes. Describe........ | _____ | $_____

**42. Interests in partnerships or joint ventures**

☐ No

☐ Yes. Describe........    Name of entity:                                    % of ownership:

_____    _____%    $_____

_____    _____%    $_____

_____    _____%    $_____

**43. Customer lists, mailing lists, or other compilations**

☐ No

☐ Yes. Do your lists include personally identifiable information (as defined in 11 U.S.C. § 101(41A))?

☐ No

☐ Yes. Describe........ | _____ | $_____

**44. Any business-related property you did not already list**

☐ No

☐ Yes. Give specific    _____    $_____
information .........
    _____    $_____

    _____    $_____

    _____    $_____

    _____    $_____

    _____    $_____

**45.** Add the dollar value of all of your entries from Part 5, including any entries for pages you have attached
for Part 5. Write that number here ...........................................................................................  →  $_____

| **Part 6:** | **Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In.** |
|---|---|
| | If you own or have an interest in farmland, list it in Part 1. |

**46. Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**

☐ No. Go to Part 7.

☐ Yes. Go to line 47.

Current value of the
portion you own?
Do not deduct secured claims
or exemptions.

**47. Farm animals**

*Examples*: Livestock, poultry, farm-raised fish

☐ No

☐ Yes...................... | _____ | $_____

Debtor 1 _____   Case number *(if known)*_____
       First Name      Middle Name      Last Name

48. **Crops—either growing or harvested**

   ❏ No
   ❏ Yes. Give specific
       information. ............                       $_____

49. **Farm and fishing equipment, implements, machinery, fixtures, and tools of trade**

   ❏ No
   ❏ Yes.........................                       $_____

50. **Farm and fishing supplies, chemicals, and feed**

   ❏ No
   ❏ Yes.........................                       $_____

51. **Any farm- and commercial fishing-related property you did not already list**

   ❏ No
   ❏ Yes. Give specific
       information. ............                       $_____

52. **Add the dollar value of all of your entries from Part 6, including any entries for pages you have attached for Part 6. Write that number here** ...................................................................➔    $_____

## Part 7:   Describe All Property You Own or Have an Interest in That You Did Not List Above

53. **Do you have other property of any kind you did not already list?**
   *Examples:* Season tickets, country club membership

   ❏ No
   ❏ Yes. Give specific                           $_____
       information. ............                     $_____
                                     $_____

54. **Add the dollar value of all of your entries from Part 7. Write that number here** ....................➔    $_____

## Part 8:   List the Totals of Each Part of this Form

55. **Part 1: Total real estate, line 2** ...........................................................................................➔    $_____

56. **Part 2: Total vehicles, line 5**             $_____

57. **Part 3: Total personal and household items, line 15**     $_____

58. **Part 4: Total financial assets, line 36**          $_____

59. **Part 5: Total business-related property, line 45**       $_____

60. **Part 6: Total farm- and fishing-related property, line 52**    $_____

61. **Part 7: Total other property not listed, line 54**        + $_____

62. **Total personal property. Add lines 56 through 61.** ....................    $_____     Copy personal property total ➔ + $_____

63. **Total of all property on Schedule A/B. Add line 55 + line 62.** ................................................................ $*288,697.09*

# Exhibit E

ORDER    438579

DOCKET NO: NNHCV226121488S

WELLS FARGO BANK, N.A.
   V.
MITCHELL, RONALD B., AKA RONALD
BENJAMIN MITCHELL Et Al

SUPERIOR COURT

JUDICIAL DISTRICT OF NEW HAVEN
   AT NEW HAVEN

4/24/2023

<u>ORDER</u>

ORDER REGARDING:
02/22/2023 108.00 MOTION FOR JUDGMENT-STRICT FORECLOSURE

The foregoing, having been heard by the Court, is hereby:

ORDER:

Foreclosure by sale entered.

Judicial Notice (JDNO) was sent regarding this order.

438579

Judge: WALTER MICHAEL SPADER JR
Processed by: Tara Bartlett

This document may be signed or verified electronically and has the same validity and status as a document with a physical (pen-to-paper) signature. For more information, see Section I.E. of the *State of Connecticut Superior Court E-Services Procedures and Technical Standards* (https://jud.ct.gov/external/super/E-Services/e-standards.pdf), section 51-193c of the Connecticut General Statutes and Connecticut Practice Book Section 4-4.

DOCKET NUMBER: **NNHCV226121488S**

WELLS FARGO BANK, N.A.

vs.

RONALD B. MITCHELL AKA RONALD BENJAMIN
MITCHELL ET AL

JUDICIAL DISTRICT
OF NEW HAVEN

JUDGMENT DATE:
Monday, April 24, 2023

## Notice of Judgment of Foreclosure by Sale

Property Address: 290 Tuthill Street, West Haven CT 06516

Non-military findings made. Sale is subject to the right of redemption, if any, in the USA. Advertising of the sale shall only take place on the Judicial Branch foreclosure listing web page, not in the newspaper.

### Judgment of Foreclosure by Sale is hereby entered as follows:

| | | | |
|---|---|---|---|
| Debt: | $148,644.57 as of 2/2/2023 | Appraisal Fee: | $.00 |
| Attorney Fees: | $4,775.00 | Title Search Fee: | $225.00 |
| Total: | $153,419.57 | Fair Market Value: | $248,000.00 |
| | | Land: | $85,000.00 |
| | | Improvements: | $163,000.00 |

The Sale Date is: Saturday, July 22, 2023

Terms of the Sale: 12:00 noon on the premises.

Deposit Amount: $24,800.00 Deposit to be paid by bank or certified check only.

Committee Appointed: Daniel Lyons, Esq. *334-336 Main St., 2nd Fl, West Haven, CT 06516*

*Ordered in accordance with the Statewide Standing Orders(JD-CV-79) and Uniform Procedures for Foreclosure by Sale Matters(JD-CV-81).*

Independent Appraiser: Eugene Leone 26 Westport Road Easton, CT 06612

Return of Appraisal by: Wednesday, July 12, 2023

*Deposit not required if Plaintiff is the successful bidder. The Plaintiff may submit a bid via fax.*

No fees or expenses prior to: Wednesday, June 07, 2023

Sign to be posted on: Thursday, June 22, 2023

~~Publication in~~

Ad to be posted on Judicial Website.

Plaintiff's Atty: MCCALLA RAYMER LEIBERT PIERCE LLC, 50 WESTON STREET, HARTFORD, CT 06120

*Copies sent Thursday, April 27, 2023 to:*
*MCCALLA RAYMER LEIBERT PIERCE LLC;*
*CONN HOUSING FINANCE AUTHORITY*

BY THE COURT (Spader, J.)

T Bartlett

120