**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION**

| | |
|---|---|
| In re:<br><br>Ronald Benjamin Mitchell and<br>Deborah Ann Mitchell<br>          *Debtors* | Case No.: 23-30450 (AMN)<br>Chapter 13<br><br>Re: ECF Nos. 65, 85, 92, 95, 116 |

**MEMORANDUM OF DECISION AND ORDER
DISMISSING DEBTORS' CHAPTER 13 CASE**

Pending before the court is the Chapter 13 Trustee's Motion to Dismiss Ronald Benjamin Mitchell's and Deborah Ann Mitchell's ("Debtors") Chapter 13 bankruptcy case.  ECF No. 95 ("Motion").  Also pending are the court's Order to Show Cause why the case should not be dismissed, a creditor's Motion for Relief from Stay, and the Debtors' Objection to a mortgage holder's proof of claim.  As explained below, the Motion to Dismiss will be granted and the other matters are therefore moot.

Briefly, the dispute here centers around the Debtors' claims that Wells Fargo Bank, N.A. ("Wells Fargo" or "Claimant") failed and continues to fail to provide the Debtors with proof it complied with various procedural steps the Debtors argue are necessary before Wells Fargo can proceed to foreclose on their home.  The Debtors object to the Motion and to Wells Fargo's Proof of Claim, seek recusal of the bankruptcy judge, replacement of the Chapter 13 Trustee and possibly conversion of this case to one under Chapter 11.  According to the Debtors, Wells Fargo has no enforceable claim against them or against their real property, but their legal theories do not appear to have merit.  *See, McLaughlin v. CitiMortgage, Inc.*, 726 F. Supp. 2d 201, 212 (2012) (discussion of the "vapor money" theory stating that "any debt based upon a loan of

credit rather than legal tender is unenforceable.")  The *McLaughlin* case discusses the underpinnings of theories that are, at least facially, similar to what the Debtors seem to be arguing.  Their arguments, as the court understands them, generally include:

- The Debtors' demands to Wells Fargo for an "authentic certified accounting statement" and "verifiable proof of the debt" have been unsuccessful, ECF No. 85, p. 4, and notwithstanding a state court foreclosure judgment determining the debt, the bankruptcy court should permit litigation to determine the debt;

- Obligations under promissory notes, such as the one signed by Mr. Mitchell here, (as discussed below), are satisfied when the promissory note is offered and accepted by a "local federal reserve agent or lender." ECF No. 85, pp. 4-5; and

- No corporation is legally allowed to be a creditor and any demand for payment of a debt is illegal, because "[a]ny corporation claiming to be a creditor is against the law and public policy in the United States because *the people in the nation* are the true creditors," ECF no. 85, p. 5. (emphasis in original).

Despite numerous attempts by the court and the Chapter 13 Trustee (the "Trustee") to determine if the Mitchells will agree to a feasible Chapter 13 Plan to save their home from foreclosure – which the Trustee, the court and the attorney for Wells Fargo stated the Debtors appear financially able to propose – the Debtors will not do so.

I.     **PROCEDURAL HISTORY**

Wells Fargo holds a note and mortgage on certain real property owned by the Debtor known as 290 Tuthill Street, West Haven, Connecticut (the "Property").  *See, Wells Fargo Bank, N.A., v. Ronald B. Mitchell AKA Ronald Benjamin Mitchell, et al.*, Connecticut Superior Court Case No. NNHCV226121488S ("Foreclosure Case");  Proof of Claim No. 1-1 (the "Claim").  Attached to the Claim is a copy of a note signed by Ronald Benjamin Mitchell in the amount of $147,000, payable to Family Choice Mortgage Corporation.  Claim, p. 15-17.  An *allonge* appears to be attached to the note

2

with an indorsement to Ohio Savings Bank and then a second indorsement in blank.[1] Claim, p. 18.  The mortgage deed securing the note is signed by both Debtors.  Claim, p. 33.  The Claimant also attached an Assignment of Mortgage, showing Family Choice Mortgage Corporation assigned the mortgage to the Claimant.  Claim, p. 34.  The Claimant is the plaintiff in a pending Connecticut state court foreclosure action, *Wells Fargo Bank, N.A., v. Ronald B. Mitchell AKA Ronald Benjamin Mitchell, et al.*, Connecticut Superior Court Case No. NNHCV226121488S.  On April 24, 2023, the state court entered a judgment of foreclosure, and the appeal period expired prior to the Petition Date (the "Judgment").  Foreclosure Case, Doc. No. 120.  To enter a judgment of foreclosure, a Connecticut state court must determine the plaintiff has standing to enforce the note that is secured by the mortgage being foreclosed.  The Claimant filed a Motion for Relief from Stay (the "Claimant's Motion) to pursue its non-bankruptcy remedies on January 10, 2024.  ECF No. 65.

On February 20, 2024, the Debtors filed an Objection to Claim (the "Objection") seeking to disallow the Claim due to "wrongful foreclosure" and "violation of public policies and congressional law", including violations of several federal statutes.  ECF No. 85, p. 5.  The Debtors also ask this court to "overturn the foreclosure proceedings and rule in favor of a total discharge from all financial liabilities with [the Claimant] and grant a permanent stay at [the Property]."  ECF No. 85, p. 6.

Other than the Claim by Wells Fargo, the Claims Register for this case reflects less than $7,700 of unsecured, non-priority claims.  Because the Debtors have paid

---

[1]    Conn.Gen.Stat. § 42a-3-205(b) provides, "When endorsed in blank, an instrument becomes payable to bearer . . .."

3

more than this to the Chapter 13 Trustee already, the only purpose to remain in bankruptcy at this time is to address the Wells Fargo Claim.

The Claimant argues the Debtors' Objection is frivolous, barred by collateral estoppel, and barred by the *Rooker-Feldman* doctrine.  ECF No. 98, p. 2.

The court entered an Order to Show Cause (the "Show Cause Order") on March 1, 2024, stating this court has no power to review or reverse the foreclosure Judgment, requiring the Debtors to show cause why their case should not be dismissed and requiring the Debtors to file a Chapter 13 Plan that complies with the Bankruptcy Code, proposes to pay creditors, and is feasible.  ECF No. 92.  On March 12, 2024, the Trustee filed the pending Motion to Dismiss the Debtors' Chapter 13 case because the Debtors fail to recognize the Judgment as legitimate and did not propose to pay it.  ECF No. 95.

The Debtors responded to the Claim, the Order, the Claimant's Motion, and the Motion to Dismiss by asserting various legal contentions that are not viable.  *See,* ECF Nos. 59, 68, 85, 99.  *See, also, McLaughlin* 726 F.Supp.2d at 212 (discussing the debunked vapor money theory and related theories).  The Chapter 13 Plan filed by the Debtors is riddled with assertions the Claim – and by implication the state court foreclosure Judgment – are invalid and unenforceable.

The court held a hearing concerning the Objection, the Motion, the Order, and the Claimant's Motion on April 11, 2024.  During the April 11th hearing, the court stated the Debtors would need to propose a plan to pay Wells Fargo monthly post-petition payments as well as payments to the Chapter 13 Trustee to cure the arrearage if they

sought to proceed with their Chapter 13 case.  ECF No. 107 at 00:22:07–00:22:35.[2]  The amount required to pay monthly to Wells Fargo and the Chapter 13 Trustee in order to confirm a Chapter 13 Plan was discussed.  The Court continued the hearing – including the hearing on the Claimant's motion for relief from stay over its objection, *see*, 11 U.S.C. § 362(e) – to give the Debtors time to consider whether they wished to propose a feasible plan but cautioned the continuance of the hearing would be a final continuance.  ECF No. 107 at 24:35–25:15.  The court stated the case would be dismissed at the April 25, 2024, hearing if the Debtors intended to pursue their claims seeking bankruptcy court review of the state court foreclosure Judgment.  ECF No. 107 at 00:28:03–00:28:23.  The court stated the Objection would be overruled if not withdrawn on April 25, 2024, because the legal basis for the Objection was premised on relitigating the state court's foreclosure Judgment.  The Trustee noted the Debtors' Schedules I and J (showing income and expenses) did not support a conclusion they had sufficient net income to afford a feasible Chapter 13 Plan.  The court noted the Schedules I and J would need to be addressed during the hearing on April 25 as well.  ECF No. 107 at 00:30:03–00:31:11.

      Two days prior to the April 25th hearing, the Debtors filed a "Response/Reply and Rebuttal" (the "Response") seeking recusal of the judge, replacement of the Chapter 13 Trustee, and conversion of their case to Chapter 11.  ECF No. 110, refiled at ECF No. 116.  The Response also made clear the Debtors were still contesting the Wells Fargo Claim and pursuing a legal strategy to relitigate the foreclosure case.  *See,* ECF No.

---

[2]     All timestamps indicate the hours minutes and seconds (00:00:00) for the .mp3 file publicly available at the referenced ECF No. as played on VLC Media Player.

116. The Debtors cite several federal statutes[3] and argue the court has failed to respond to the Debtors' concern that they are being deprived of an opportunity to dispute the Wells Fargo Claim.  ECF No. 116, p. 2.  They claim they have placed money in escrow, but do not state the amount and do not agree they would pay any of the escrowed funds to Wells Fargo.  They previously admitted they did not pay post-petition taxes for the Property.  The Debtors allege Wells Fargo has failed through correspondence to adequately respond to their requests for more information about the funding mechanism and process at the inception of the loan.  ECF No. 116, p.6.  The Debtors also appear to argue Wells Fargo is required to produce the original note before the bankruptcy court may determine the Objection.  ECF No. 116, p. 7.  However, in all of their filings, the Debtors ignore the state court's foreclosure Judgment and fail to identify how the bankruptcy court may also ignore it.

    During the continued hearing held April 25, 2024, the Trustee restated her arguments for dismissal, including the Debtors' lack of reported regular income as defined by Bankruptcy Code 109(e).  ECF No. 113 at 1:05–1:27.  According to the Debtors' Schedules I and J, the Debtors' expenses exceed their income.  ECF No. 21, pp. 26-30.  The Debtors also refused to withdraw their Objection, reconfirming their intention to relitigate the state court foreclosure case before the bankruptcy court.  ECF No. 113 at 28:07–28:20.  Based on the foregoing, the court concluded that the Debtors are pursuing a futile objection to the Wells Fargo Claim and are not proceeding in good faith in this Chapter 13 case.  ECF No. 113 at 29:15–29:35.

---

[3]    The Debtors cite the Fair Debt Collection Practices Act, the Consumer Credit Protection Act, the Fair Credit Reporting Act, the Truth in Lending Act, the Gramm Leach Bliley Act, the "March 9, 1933 Act", the "June 12, 1945 Act", the Federal Reserve Act and the Administrative Procedures Act.  ECF No. 116, pp. 2, 5.

## II.  JURISDICTION

The Court has jurisdiction over these proceedings pursuant to 28 U.S.C. §§ 157(b) and 1334(b) and the United States District Court for the District of Connecticut's General Order of Reference dated September 21, 1984.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) (case administration).

## III.  APPLICABLE LAW

Pursuant to Bankruptcy Code § 1307(c), the court may dismiss a Chapter 13 case for cause.  11 U.S.C. § 1307(c).  Although not expressly enumerated in the statute, it is well established that lack of good faith may also be cause for dismissal under § 1307(c).  *In re Ciarcia*, 578 B.R. 495, 499 (Bankr. D. Conn. 2017).  When determining a lack of good faith, the court examines factors such as "whether the debtor was forthcoming with the court, whether the debtor accurately stated facts, debts, and expenses, whether the debtor misled the court through fraudulent misrepresentation, how the debtor's actions affect creditors, and whether the debtor has abused the purpose of the bankruptcy code."  *In re Lin*, 499 B.R. 430, 436 (Bankr. S.D.N.Y. 2013).

A court may also convert a Chapter 13 case to a case under Chapter 11, but only on request by the debtor, (*i.e.*, a filed motion seeking conversion) after notice and a hearing.  11 U.S.C. §§ 1307(d) and (f).

The *Rooker-Feldman* doctrine bars federal courts from hearing cases already decided by state courts, when plaintiffs who lost in state court request that a federal court reject or overrule the state court judgment.  *Thomas v. Deutsche Bank Nat'l Tr. Co.,* No. 20-CV-06024 (VEC) (KHP), 2021 WL 1844974, at *2 (S.D.N.Y. Mar. 10, 2021) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)), report

7

and recommendation adopted, No. 20-CV-06024 (VEC), 2021 WL 1315484 (S.D.N.Y. Apr. 8, 2021), *affd*, No. 21-1208-CV, 2022 WL 761140 (2d Cir. Mar. 14, 2022).

To determine the preclusive effect of a state court judgment, a court must apply the preclusive law of the state. *Guardian Alarm Servs. v. Rossman (In re Rossman)*, Nos. 17-51160 (JAM), 18-05010 (JAM), 2019 WL 3330781 at *3 (Bankr. D. Conn. July 24, 2019) (internal quotation marks omitted). In Connecticut, issue preclusion or collateral estoppel is that aspect of *res judicata* which prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action between the same parties upon a different claim. *Lighthouse Landings, Inc. v. Conn. Light & Power Co.*, 300 Conn. 325, 343-44, 15 A.3d 601, 613 (2011); accord, *Options Unlimited, Inc. v. McCann (In re McCann)*, 634 B.R. 207, 215 (Bankr. D. Conn. 2021). For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the state court action. *Id.*, at 344. It also must have been actually decided and the decision must have been necessary to the judgment. *Id.* An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. *Id.* An issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered. *Id.* If an issue has been determined, but the judgment is not dependent on the determination of the issue, the parties may relitigate the issue in a subsequent action. *Id.* Findings on nonessential issues usually have the characteristics of dicta. *Id.*

To establish standing to foreclose on a defendant's property, the plaintiff must prove it is the holder of the note or one who was otherwise entitled to enforce the note. *Bank of N.Y. Mellon v. Tope*, 345 Conn. 662, 679-80, 286 A.3d 891, 903 (2022).

"The principal purpose of the Bankruptcy Code is to grant a fresh start to the honest but unfortunate debtor." *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367 (2007) (internal quotation marks omitted).  To be a debtor in bankruptcy, an individual must meet the standards propounded in Bankruptcy Code § 109.  Bankruptcy Code § 109(e) states, "Only an individual with regular income . . . may be a debtor under chapter 13 of this title."  Bankruptcy Code § 101(30) states, "The term 'individual with regular income' means individual whose income is sufficiently stable and regular to enable such individual to make payments under a plan under chapter 13 of this title . . . ."  11 U.S.C. § 101(30).

IV.     **DISCUSSION**

<u>The Debtors Impermissibly Seek to Relitigate the State Court Judgment</u>

This court is unable to sustain the Debtors' Objection to the Wells Fargo Claim due to collateral estoppel and the *Rooker-Feldman* Doctrine which require the bankruptcy court – and any federal court – to defer to a state court judgment when the matter was fully and fairly litigated in the state court action, the matter in issue was actually decided and the decision must have been necessary to the judgment.

During the six-month duration of this case, the Debtors have consistently contested the authenticity and enforceability of the Claim.  They continue to file pleadings asserting unsupported legal theories to support their argument the note and mortgage are unenforceable.  *See,* ECF Nos. 59, 68, 85, 99, 116.  They continue to ask the court to revisit legal claims about the enforceability of the note and mortgage that could have been raised before the Connecticut Superior Court.  *See,* ECF Nos. 59, 68, 85, 99, 116.  As the Debtors acknowledge, they seek to "overturn the foreclosure

9

proceedings and rule in favor of a total discharge from all financial liabilities with [the Claimant] and grant a permanent stay at [the Property]." ECF No. 85.

As explained many times in several hearings, the bankruptcy court is simply without authority to change the effect of the state court's foreclosure Judgment. As stated by the Trustee in the Motion to Dismiss,

> A judgment of foreclosure by sale is deemed final if the trial court determines the method of foreclosure and the amount of the debt. *Saunders v. KDFBS, LLC*, 335 Conn. 586, 593, 239 A.3d 1162, 1168 (2020). "Unless a different time period is provided by statute, an appeal must be filed within twenty days of the date notice of the judgment or decision is given." Conn. Practice Book Sec. 63-1. No appeal was filed in the Foreclosure. The Debtor did file a "notice of intent to appeal" indicating a potential attempt to appeal the Foreclosure Judgment, but those attempts, according to the Debtor's communication, occurred after the appeal period ran.
> ECF No. 95.

The court agrees with the Trustee's assessment. The Connecticut Superior Court determined the Claimant holds the note and is entitled to enforce it by foreclosing on the mortgage. The failure of the Debtors to come to terms with this and to insist on litigation before the bankruptcy court on the very same issue demonstrates a lack of good faith. There is no purpose for this bankruptcy case apart from curing the arrearage due to the Claimant. *See,* ECF No. 95. Importantly, and unaddressed by the Debtors, to confirm a plan now would require the Debtors to cure their post-petition arrearage on their mortgage payments, which the Debtors will not agree to pay.

Allowing the case to continue would only harm the Claimant and permit the Debtors to abuse the Bankruptcy Code for their own dilatory purposes. To continue to allow the Debtors to restate and reframe their arguments again would also waste judicial resources. *See, McLaughlin v. CitiMortgage, Inc.,* 726 F. Supp. 2d at 214 (collecting cases and describing legal theories facially similar to some of those

10

espoused by the Debtors in this case as frivolous, patently ludicrous, universally rejected, and a waste of tax dollars).

Because the court cannot sustain the Debtors' Objection to the Wells Fargo Claim, any proceedings to further hear the Objection will be wasteful of the Trustee's time and the court's time, and will unfairly delay and impede Wells Fargo's pursuit of its non-bankruptcy rights or remedies. If this court cannot reverse the state foreclosure Judgment, there is simply no purpose to holding the evidentiary hearing the Debtors desire and the case should be dismissed.

<u>The Debtors' Failure to Take Reasonable Steps Toward Confirmation</u>

Separately, the court can conclude the Debtors are not proceeding in good faith because they failed to take reasonably necessary steps to confirm their Chapter 13 Plan. Included in these steps is the obligation to demonstrate through their sworn Schedules I and J they can fund a Chapter 13 Plan. The Chapter 13 Trustee objected to confirmation of the Debtors' Chapter 13 Plan on this very basis, on September 19, 2023, and again on February 12, 2024, stating "[t]he Plan is not feasible under Section 1325(a)(6) of the Bankruptcy Code. The Debtor's excess income over expenses, according to Schedules I and J, is negative $2,516.46." ECF Nos. 39, 73.

This issue was also raised and brought to the Debtors' attention during the April 11th and April 25th hearings. The failure to file amended Schedules I and J combined with the Debtors' statements they are escrowing some funds each month toward the mortgage payment and making monthly payments to the Trustee in the amount of $2,400 is troubling. *See,* ECF No. 95. The Debtors' history of making monthly payments of $2,400 to the Chapter 13 Trustee supports the feasibility of a Chapter 13

11

Plan, but the failure to file necessary documents and to acknowledge the obligation to pay Wells Fargo anything belies their statements they seek to confirm one.

According to the Trustee, a feasible Chapter 13 Plan payment be approximately $1,511.31, and according to counsel for Wells Fargo, the post-petition payments (and post-confirmation payments) to Wells Fargo would total approximately $1,740.25 for the current monthly installment payment and real property tax escrow.  ECF No. 107, 13:57-15:32.  In other words, if the Debtors would agree to: (1) pay approximately $1,750 monthly to Wells Fargo as their monthly mortgage payment; (2) pay approximately $1,500 monthly to the Chapter 13 Trustee ($3,250 per month in the aggregate) as the amount necessary to cure the arrearage to Wells Fargo through a Chapter 13 Plan; and (3) amend their Schedules I and J and provide information to the Chapter 13 Trustee, then they could save their Property.  But, they refuse to propose such a Chapter 13 Plan.

All other arguments have been considered and found to be without merit. Accordingly, it is hereby

This is a final order.  The time within which a party may file an appeal of a final order of the bankruptcy court is fourteen (14) days after it is entered on the docket. *See*, Fed.R.Bankr.P. 8002(a)(1).

**ORDERED**: The Trustee's Motion to Dismiss, ECF No. 95, is GRANTED; and it is further,

**ORDERED:** All other pending motions and objections are, respectively, DENIED and OVERRULED as moot (ECF Nos. 65, 85, 92, 116).

Dated this 1st day of May, 2024, at New Haven, Connecticut.



Ann M. Nevins
Chief United States Bankruptcy Judge
District of Connecticut

12